## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| CHASE COCHRAN, Individually and For Others Similarly Situated<br><br>v.<br><br>WORLEY FIELD SERVICES INC. | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Chase Cochran ("Cochran") brings this collective action to recover unpaid wages and other damages from Worley Field Services Inc. ("Worley").

2. Worley employed Cochran as one of its Straight Time Employees (defined below).

3. Worley pays Cochran and its other Straight Time Employees by the hour.

4. Cochran and the other Straight Time Employees regularly work more than 40 hours per workweek.

5. But Worley does not always pay Cochran and its other Straight Time Employees required overtime wages.

6. Instead, Worley pays Cochran and its other Straight Time Employees the same hourly rate for all hours worked, including those worked after 40 in a workweek, for at least part of their employment (a practice known as "straight time for overtime").

7. Worley does not pay Cochran and its other Straight Time Employees on a "salary basis" as required to qualify for any relevant overtime exemption.

8. In addition to hourly pay, Worley uniformly pays Cochran and its other Straight Time Employees a daily per diem.

-1-

9. But Worley does not include this per diem compensation in the calculation of their regular rates of pay for overtime purposes.

10. Worley's straight time for overtime pay scheme and exclusion of per diem pay from Cochran and the other Straight Time Employee's regular rate calculations violates the Fair Labor Standards Act ("FLSA") by depriving Cochran and the other Straight Time Employees of the "time and a half" overtime premium—based on all remuneration—they are owed for hours worked over 40 in a workweek.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. *See* 29 U.S.C. § 216(b).

12. This Court has general personal jurisdiction over Worley because Worley is a domestic corporation and Worley's principal place of business is in Houston, Texas.

13. Venue is proper because Worley is headquartered in Houston, Texas, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

14. Cochran worked for Worley as a Senior Commissioning/Completions Specialist at Worley's headquarters in Houston, Texas from approximately May 2023 until March 2024.

15. Throughout portions of his employment Worley paid Cochran straight time for overtime.

16. Throughout his employment, Worley also paid Cochran a daily per diem, which Worley never included in calculating Cochran's regular rate of pay for overtime purposes.

17. Cochran's written consent is attached as **Exhibit 1**.

18. Cochran brings this collective action on behalf of himself and all other similarly situated Worley employees who Worley paid under its illegal straight time for overtime pay scheme.

19. Worley paid each of these employees the same hourly rate for all hours worked, including those worked over 40 in a workweek, in willful violation of the FLSA, for at least part of their employment.

20. The putative collective of similarly situated employees is defined as:

> **All Worley employees who were paid straight time for overtime at any time during the past 3 years (the "Straight Time Employees").**

21. Worley is a Texas corporation headquartered in Houston, Texas.

22. Worley can be served through its registered agent: **CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201**.

## FLSA Coverage

23. At all relevant times, Worley has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

24. At all relevant times, Worley has been an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

25. At all relevant times, Worley has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as phones, computers, and personal protective equipment—that have been moved in or produced for commerce.

26. At all relevant times, Worley has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

27. At all relevant times, Cochran and the other Straight Time Employees have been Worley's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

28. At all relevant times, Cochran and the other Straight Time Employees have been engaged in commerce or in the production of goods for commerce.

29. Worley uniformly has paid Cochran and its other Straight Time Employees the same hourly rate for all hours worked, including those worked above 40 in a workweek, for at least some portion of their employment.

30. Worley applies its illegal straight time for overtime pay scheme to the Straight Time Employees regardless of any alleged individualized factors, such as specific job title or precise geographic location.

31. As a result of Worley's uniform straight time for overtime pay scheme, Cochran and the other Straight Time Employees do not always receive overtime at the overtime as required by the FLSA.

32. Specifically, by paying straight time for overtime, Worley does not pay Cochran and its other Straight Time Employees at least 1.5 times their regular rates of pay for all hours worked over 40 in a workweek.

33. Worley's uniform straight time for overtime pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

34. Worley is in the business of providing engineering, procurement, construction management, and construction services for industrial projects.

35. To meet its business objectives, Worley hires workers like Cochran and the other Straight Time Employees who it assigns to provide services to its clients.

36. Worley uniformly pays Cochran and its other Straight Time Employees on an hourly basis.

37. Cochran and the other Straight Time Employees regularly work more than 40 hours per workweek.

38. But Worley does not always pay Cochran and its other Straight Time Employees required overtime wages.

39. Instead, Worley paid Cochran and its other Straight Time Employees the same hourly rate for hours worked over 40 in a workweek for at least part of their employment.

40. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal straight time for overtime pay scheme for similar work.

41. For example, Cochran was employed by Worley as a Senior Completions/Commissioning Specialist in Houston, Texas from approximately May 2023 until March 2024.

42. As a Senior Completions/Commissioning Specialist, Cochran's primary responsibilities included planning, implementing, coordinating, and directing pre-commissioning testing programs and start-up engineering procedures for a liquified natural gas terminal construction project on behalf of Worley's client, Venture Global.

43. Cochran was Worley's hourly employee.

44. Specifically, Worley paid Cochran approximately $85.01 per hour, as well as a daily per diem of $191 per day.

| Per Diem | For the duration of the assignment, you will receive a **non-taxable** per diem of:<br>- $191 per day for housing, meals, and incidentals |
|---|---|

45. Worley does not maintain any system through which Cochran and the other Straight Time Employees clocked in and out.

46. Worley requires Cochran and the other Straight Time employees to record the number of hours they worked via timesheets submitted to Worley through the timekeeping system that Worley selected and utilized.

47. Cochran and the other Straight Time Employees regularly work more than 40 hours per workweek.

48. In fact, Cochran and the other Straight Time Employees typically work 45 to 60 hours per workweek.

49. Despite knowing Cochran regularly worked over 40 in a workweek, Worley did not always pay him overtime wages at 1.5 times his regular rate of pay for these hours.

50. Instead, Worley paid him according to its illegal straight time for overtime pay scheme.

51. So, rather than receiving 1.5 times his regular rate for every hour of overtime he worked, Cochran received the same hourly rate ($85.01) for some overtime hours.

52. Because of Worley's straight time for overtime pay scheme, Cochran did not receive the required "time and a half" overtime premium for all hours he worked over 40 in a workweek, in willful violation of the FLSA.

53. Cochran complained about not receiving proper overtime compensation beginning in July 2023 to Worley management, human resources, and Worley's "ethics line."

54. Cochran did not receive an explanation for why Worley did not pay him "time and a half" for all overtime hours.

55. Worley pays its other Straight Time Employees according to the same illegal straight time for overtime pay practice it imposes on Cochran.

56. Every Straight Time Employee worked more than 40 hours in at least one workweek during the relevant period.

57. Worley also uniformly pays Cochran and the Straight Time Employees per diems in addition to their base hourly rate of pay.

58. But Worley uniformly fails to include Cochran's and the Straight Time Employees' per diem payments in calculating these employees' regular rates of pay for overtime purposes.

59. By failing to include Cochran's and the Straight Time Employees' per diem payments in calculating their regular rates of pay for overtime purposes, Worley violates the FLSA by depriving Cochran and the Straight Time Employees of overtime pay at rates not less than 1.5 times their regular rates of pay—based on all renumeration received—for the hours they work in excess of 40 hours in a workweek

60. Despite knowing its Straight Time Employees regularly work overtime, Worley does not pay them premium overtime wages based on all remuneration.

61. Worley does not pay Cochran and its other Straight Time Employees a guaranteed salary that is not subject to reduction based on the quality or quantity of work.

62. Rather, any alleged "salary" Worley purports to pay Cochran and the other Straight Time Employees (based on 40 hours worked each week) is subject to reduction—and is in fact reduced—based on the quality or quantity of work.

63. Thus, Cochran's pay fluctuates based on the quality and quantity of work he performs.

64. Worley has never paid Cochran and the other Straight Time Employees on a "salary basis." *See* 29 C.F.R. § 541.602.

65. Because Worley fails to pay Cochran and its other Straight Time Employees on a "salary basis," these workers are all non-exempt employees entitled to premium overtime wages.

66. But Worley does not pay Cochran and its other Straight Time Employees premium overtime wages for every hour they work in excess of 40 in a workweek in willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

67. Cochran incorporates all other paragraphs by reference.

68. Like Cochran, the other Straight Time Employees are victimized by Worley's illegal straight time for overtime pay practice.

69. Like Cochran, the Other Straight Time Employees are paid a per diem that is not included in calculating their regular rates of pay for overtime purposes.

70. Other Straight Time Employees worked with Cochran and indicated they were paid in the same manner and performed similar work.

71. Based on his experience with Worley, Cochran is aware Worley's illegal straight time for overtime pay practice was imposed on the other Straight Time Employees.

72. And Cochran is aware, based on his experience, that Worley's exclusion of per diem pay from the regular rate calculation for overtime purposes was also imposed on the other Straight Time Employees.

73. The Straight Time Employees are similarly situated in the most relevant respects.

74. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime pay.

75. Any relevant exemption defenses would require Worley to pay the Straight Time Employees on a "salary basis."

76. Because Worley fails the "salary basis" test with respect to the Straight Time Employees, the specific job duties performed by those employees are largely irrelevant.

77. The only *relevant* inquiry is whether the Straight Time Employees are paid "straight time" at any point when they worked more than 40 hours in a workweek (which, by definition, they were).

78. Therefore, the specific job titles or precise job locations of the various Straight Time Employees do not prevent collective treatment.

79. Rather, Worley's uniform straight time for overtime pay practice renders Cochran and the other Straight Time Employees similarly situated for the purposes of determining their right to overtime pay.

80. Worley's records reflect the number of hours Cochran and the other Straight Time Employees worked each week "on the clock."

81. Worley's records also show it paid Cochran and the other Straight Time Employees "straight time," instead of "time and a half," for some overtime hours.

82. The back wages owed to Cochran and the other Straight Time Employees can therefore be calculated using the same formula applied to the same records.

83. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Worley's records, and there is no detraction from the common nucleus of liability facts.

84. Therefore, the issue of damages does not preclude collective treatment.

85. Cochran's experiences are therefore typical of the experiences of the other Straight Time Employees.

86. Absent this collective action, many Straight Time Employees will not obtain redress for their injuries, and Worley will reap the unjust benefits of violating the FLSA.

87. Further, even if some of the Straight Time Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

88. Indeed, the multiplicity of actions would create a hardship to the Straight Time Employees, the Court, and Worley.

89. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Straight Time Employees' claims.

90. Cochran knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

91. As part of its regular business practices, Worley intentionally, willfully, and repeatedly violated the FLSA with respect to Cochran and the other Straight Time Employees.

92. Worley's illegal straight time for overtime pay practice deprived Cochran and the other Straight Time Employees of the premium overtime wages they are owed under federal law.

93. There are many similarly situated Straight Time Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

94. The Straight Time Employees are known to Worley, are readily identifiable, and can be located through Worley's business and personnel records.

## WORLEY'S VIOLATIONS WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF THE FLSA

95. Cochran incorporates all other paragraphs by reference.

96. Worley knows it is subject to the FLSA's overtime provisions.

97. Worley knows the FLSA requires it to pay non-exempt employees, including Cochran and the other Straight Time Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for *all* hours worked over 40 in a workweek.

98. Worley knows Cochran and each Straight Time Employee have worked more than 40 hours in at least one workweek during relevant period because it requires these workers to report their hours worked to Worley.

99. Worley knows Cochran and the other Straight Time Employees are its hourly employees.

100. Worley knows it pays Cochran and its other Straight Time Employees on an hourly basis.

101. Worley knows it has paid Cochran and its other Straight Time Employees straight time for overtime.

102. Worley knows it does not pay Cochran and its other Straight Time Employees on a "salary basis."

103. Worley knows it does not pay Cochran and its other Straight Time Employees any guaranteed salary that is not subject to reduction based on the quantity or quality of work.

104. Thus, Worley knows its straight time for overtime pay scheme did not satisfy the "salary basis" test.

105. Worley knows it needs to pass the "salary basis" test to qualify for any exemption(s) it could claim with respect to Cochran and the other Straight Time Employees.

106. Cochran complained to Worley management, human resources, and its "ethics line" beginning in July 2023 that he was not receiving proper overtime compensation.

107. Nonetheless, Worley does not pay them "time and a half" for all hours worked in excess of 40 in a workweek.

108. Worley's failure to pay Cochran and its other Straight Time Employees overtime wages is neither reasonable, nor is its decision not to pay these non-exempt employees overtime wages made in good faith.

109. Worley knows it pays Cochran and the other Straight Time Employees a daily per diem.

110. And Worley knows it does not include this per diem in Cochran's and the other Straight Time Employees' regular rate calculations for overtime purposes.

111. Thus, Worley knows it does not pay Cochran and the other Straight Time Employees 1.5 times their regular rate of pay – based on all remuneration – for all hours worked in excess of 40 each workweek.

112. Worley knows, should know, or shows reckless disregard for whether its conduct described in this Complaint violated the FLSA.

113. Worley knowingly, willfully, and/or in reckless disregard carries out its illegal straight time for overtime pay scheme that deprives Cochran and the other Straight Time Employees of premium overtime wages in violation of the FLSA.

114. Indeed, Worley has been sued previously by employees for failing to pay overtime wages in violation of the FLSA and state wage and hour laws, including for the same illegal straight time for overtime pay scheme that is the basis of this collective action. *See e.g.*, *Kizer v. Worley Field Services, Inc.*, No. CIVSB2319624 (Cal. Super. Ct. San Bernadino County).

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

115. Cochran incorporates all other paragraphs by reference.

116. Cochran brings his FLSA claims as a collective action on behalf of himself and the other Straight Time Employees.

117. Worley violated, and is violating, the FLSA by employing non-exempt employees (Cochran and the other Straight Time Employees) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they work over 40 each workweek.

118. Worley's unlawful conduct harmed and continues to harm Cochran and the other Straight Time Employees by depriving them of the overtime wages they are owed.

119. Accordingly, Worley owes Cochran and the other Straight Time Employees the difference between the rate actually paid and the required overtime rate for all hours Worley and the other Straight Time Employees worked over 40 in each workweek and did not receive 1.5 times their regular rate of pay, based on all remuneration.

120. Because Worley knew, should have known, or showed reckless disregard for whether its straight time for overtime pay scheme violated the FLSA, Worley owes these wages for at least the past 3 years.

121. Worley is also liable to Cochran and the other Straight Time Employees for an additional amount equal to all their unpaid wages as liquidated damages.

122. Finally, Cochran and the other Straight Time Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### JURY DEMAND

123. Cochran demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Cochran, individually and on behalf of the other Straight Time Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Straight Time Employees allowing them to join this action by filing a written notice of consent;

b. An Order finding Worley liable to Cochran and the other Straight Time Employees for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

c. A Judgment against Worley awarding Cochran and the other Straight Time Employees all their unpaid overtime wages, liquidated damages, and any other penalties available under the FLSA;

d. An Order awarding attorneys' fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Dated: April 22, 2024

Respectfully submitted,

By: */s/ Michael Josephson*
Michael A. Josephson
Federal ID No. 27157
TX Bar No. 24014780
Andrew W. Dunlap
Federal ID No. 1093163
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
Federal ID No. 21615
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR COCHRAN AND THE STRAIGHT TIME EMPLOYEES**