UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHASE COCHRAN, | § | |
| Plaintiff, | § § § | |
| VS. | § § | CIVIL ACTION NO. 4:24-CV-01475 |
| WORLEY FIELD SERVICES, INC. | § § § | |
| Defendant. | § § § | |

## ORDER

Before the Court are (1) Defendant Worley Field Services Inc.'s (the "Defendant") Motion to Compel Arbitration (Doc. #12), Plaintiff Chase Cochran's (the "Plaintiff") Response (Doc. #13), and Defendant's Reply (Doc. #14)[1]. Having considered the parties' arguments, the submissions, and the applicable legal authority, the Court grants the Motion to Compel Arbitration.

### I. Background

This is a Fair Labor Standards Act ("FLSA") overtime lawsuit arising out of Plaintiff's employment as a Senior Commissioning/Completions Specialist at Defendant's headquarters on or about May 2023 until May 2024. Doc. #1 ¶¶ 10, 14. As part of his onboarding, Defendant alleges that Plaintiff signed an Employee Dispute Resolution Program and Mutual Arbitration Agreement (the "Arbitration Agreement") on April 20, 2023. Doc. #12, Ex. 1 at 29–31.

---

[1] Also before the Court is Plaintiff's Motion to Strike New Material Submitted in Defendant's Reply (Doc. #15). Because the Court did not rely on the additional declarations and evidence that Defendant supplied in its Reply, the Court denies Plaintiff's Motion to Strike as moot. Doc. #15.

The Arbitration Agreement states, in relevant part:

> **Mutual Agreement to Arbitrate Claims.** By this Agreement, both Worley ("the Company") and Employee agree to resolve any and all claims, disputes or controversies arising out of or relating to the application for employment, employment with the Company, and/or the termination of employment by arbitration before a single, neutral arbitrator with experience resolving employment disputes. The arbitration proceeding shall be administered by an arbitrator selected by agreement of the parties at the time of any dispute, or, if the parties are unable to agree, by the American Arbitration Association ("AAA") pursuant to its rules for the resolution of employment disputes. Copies of AAA's Rules are available on AAA's website (www.adr.org) or upon request from the Legal Department. Except as provided below, Employee and Company are voluntarily waiving all rights to trial in court before a judge or jury on all claims covered by this Agreement.

*Id.* at 29. The Arbitration Agreement also includes a provision regarding class actions, providing that "the Arbitrator shall not have the authority to consolidate the claims of other employees into a single proceeding, to fashion a proceeding as a class, collective, or representative action, or to award relief to a class or group of employees." *Id.* at 30. Plaintiff disputes that he ever signed the Arbitration Agreement. Doc. #13, Ex. 3 ¶ 7. On April 22, 2024, Plaintiff filed his Collective Action Complaint (the "Complaint") against Defendant in this Court, asserting FLSA claims on behalf of himself, and all others similarly situated. Doc. #1. On July 12, 2024, Defendant moved to compel arbitration. Doc. #12.

## II.   Legal Standard

In adjudicating a motion to compel arbitration, courts conduct a two-step inquiry: 1) "whether the parties agreed to arbitrate the dispute in question" and 2) "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996). The former "involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* at 258. "Where the issue is whether the parties have a valid and enforceable agreement to arbitrate, courts apply the contract law of the

2

state governing the agreement." *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005).

Under Texas law, a valid contract requires "(1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). "[A] party manifests its assent by signing an agreement." *Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013). "An electronic record or electronic signature is attributable to a person if it was the act of the person," which may be established "in any manner, including a showing of the efficacy of any security procedure." Tex. Bus. & Com. Code Ann. § 322.009.

### III. Analysis

Plaintiff does not dispute that if the Arbitration Agreement is valid, Plaintiff's claims fall within in its scope. Thus, the only issue before the Court is whether a valid agreement exists.

#### a. Valid Agreement

Plaintiff disputes that he signed and assented to the terms of the Arbitration Agreement. Doc. #13, Ex. 3 ¶ 7. "In order to meet [its] burden of establishing that Plaintiff assented, [Defendant] must submit evidence demonstrating assent." *Holmes v. Air Liquide USA LLC*, No. CIV.A. H-11-2580, 2012 WL 267194, at *2 (S.D. Tex. Jan. 30, 2012), aff'd, 498 F. App'x 405 (5th Cir. 2012). To determine "whether mutual assent is present, courts look to the communications between the parties and to the acts and circumstances surrounding these communications." *Id.*

Here, Defendant has presented numerous documents to corroborate that Plaintiff signed the Arbitration Agreement. First, Defendant presents evidence from its third-party HR software

3

system ("Taleo") that on April 20, 2023, Plaintiff entered his personal email address to electronically sign onboarding documents from Defendant. Doc. #12, Ex. 1 at 15–37. Defendant further provides screenshots from Taleo that Plaintiff completed the "US_Read & Sign EDR" onboarding task on April 20, 2023, at 6:40:54 PM. *Id.* at 39. This audit trail corresponds with the Arbitration Agreement that bears Plaintiff's electronic signature on April 20, 2023. *Id.* at 29–31. Finally, Defendant provides sworn testimony from Defendant's Talent Acquisition Manager that based on her investigation into the matter, she swears Plaintiff electronically signed the Arbitration Agreement "by entering his personal email address in the space provided at exactly April 20, 2023 at 6:40:54 PM Central Time." *Id.* at 5.

None of the arguments raised in Plaintiff's Response disprove the validity or existence of the Arbitration Agreement. First, Plaintiff submitted an affidavit wherein he states that "[b]ased on my memory and recollection, [Defendant] did not send me an arbitration agreement." Doc. #13, Ex. 3 ¶ 3. However, the Fifth Circuit has explicitly held that "'not recalling' signing [an] agreement . . . fall[s] far short of the requisite unequivocal denial" to disprove an agreement to arbitrate. *Soni v. Solera Holdings, L.L.C.*, No. 21-10428, 2022 WL 1402046, at *4 (5th Cir. May 4, 2022). Second, Plaintiff argues that he "would not have electronically signed any of [Defendant's] onboarding documents by solely typing his name into a word processing document" unless it had "some sort of electronic authentication feature." Doc. #13, Ex. 3 ¶ 5. However, Defendant's Talent Acquisition Manager has explicitly testified that Plaintiff first needed to enter his personal email address to electronically sign the document. Doc. #12, Ex. 1 at 4 ¶ 13. At no point in the electronic process would Defendant have been prompted to type his name into a blank field without any authentication feature. *See id.* Additionally, the Court notes that Defendant has provided numerous onboarding documents that Plaintiff electronically signed on April 20, 2023,

4

including his Direct Deposit Authorization, Personal History Information, and W-4. *See* Doc. #12, Ex. 1 at 15–37. These documents bear the exact same electronic signature and date as the Arbitration Agreement. *See id.* Yet, Plaintiff does not take issue with the authenticity of his electronic signature on these other onboarding documents.

The Court concludes that Plaintiff has not brought forth any arguments or evidence that "explain how the electronic signature on the [Arbitration] [A]greement is not his." *Soni*, 2022 WL 1402046, at *4. Indeed, other than Plaintiff's self-serving affidavit stating he has no recollection of signing the Arbitration Agreement, the record does not contain any evidence that shows the electronic signature on the Arbitration Agreement does not belong to Plaintiff. As such, the Court finds that a valid agreement to arbitrate exists.

### b. Attorney's Fees

Defendant seeks reimbursement of its reasonable attorney's fees associated with compelling arbitration. Doc. #12 at 11. A court may impose attorney's fees "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)). However, the Court does not find any evidence that Plaintiff's opposition was in bad faith, or alternatively, constituted vexatious behavior. For these reasons, the Court denies Defendant's request for attorney fees.

### IV. Conclusion

In conclusion, the Court hereby GRANTS Defendant's Motion to Compel Arbitration (Doc. #12) and DENIES Plaintiff's Motion to Strike as MOOT (Doc. #15). Because all of Plaintiff's claims are subject to arbitration, this case is DISMISSED WITHOUT PREJUDICE.

It is so ORDERED.

MAR 2 0 2025

--------

Date

_____

The Honorable Alfred H. Bennett
United States District Judge

6